**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| TIM PETERSON, on behalf of himself and all others similarly situated, | |
| *Plaintiff*, | |
| v. | No. 8:23-cv-146-BCB-MDN |
| LEARFIELD COMMUNICATIONS, LLC *et. al*, | |
| *Defendants*. | |

**<u>UNITED STATES OF AMERICA'S MEMORANDUM OF LAW IN DEFENSE OF THE
CONSTITUTIONALITY OF THE VIDEO PRIVACY PROTECTION ACT</u>**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ..................................................................................................2

   I.   The Video Privacy Protection Act........................................................2

   II.   Plaintiff's Claims ...............................................................................5

   III.   Procedural History ............................................................................5

ARGUMENT .......................................................................................................6

   I.   The Overbreadth Doctrine Does Not Apply to Commercial Speech. .................6

   II.   The VPPA Is Not Unconstitutionally Vague.................................................8

   III.   The VPPA Withstands Intermediate Scrutiny Under *Central Hudson*...........................9

     1)   The asserted governmental interest underlying the VPPA is substantial. ...................9

     2)   The VPPA directly advances the underlying governmental interest.........................11

     3)   The VPPA is sufficiently narrowly drawn...............................................................12

   IV.   The VPPA Is Constitutional as Applied to Learfield....................................13

CONCLUSION....................................................................................................14

i

# TABLE OF AUTHORITIES

**Cases**

*Aptive Env't, LLC v. Town of Castle Rock*,
   959 F.3d 961, 986 (10th Cir. 2020) ........................................................................9

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
   492 U.S. 469 (1989) ........................................................... 6, 9, 12, 13

*Boelter v. Advance Mag. Publishers Inc.*,
   210 F. Supp. 3d 579 (S.D.N.Y. 2016) .......................................... 3, 4, 10

*Boelter v. Hearst Commc'ns, Inc.*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016) ...................................... 3, 4, 7, 11

*Boelter v. Hearst Commc'ns, Inc.*,
   269 F. Supp. 3d 172 (S.D.N.Y. 2017) ............................................. 3, 10

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973) ........................................................... 6, 8, 9

*Brown v. Ent. Merchs. Ass'n*,
   564 U.S. 786 (2011) ........................................................... 10, 11

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980) .............................................................. 1, 4

*Connally v. Gen. Constr. Co.*,
   269 U.S. 385 (1926) ................................................................8

*Czarnionka v. Epoch Times Ass'n*,
   No. 22 Civ. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ...........11

*Edenfield v. Fane*,
   507 U.S. 761 (1993) .............................................................9, 11

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ......................................................9

*Fla. Bar v. Went for It, Inc.*,
   515 U.S. 618 (1995) .......................................................... 9, 10, 13

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ................................................................9

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) .................................................................6

*Harris v. Pub. Broad Serv.*,
  No. 1:22-cv-2456-MLB, 2023 WL 2583118 (N.D. Ga. Mar. 20, 2023)...................................11

*Holder v. Humanitarian L. Project*,
  561 U.S. 1 (2010) ............................................................................................................8, 9, 14

*In re Hulu Priv. Litig.*,
  No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012).......................................11

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) .....................................................................................................2

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017)...................................................................................11

*McCraw v. City of Oklahoma City*,
  973 F.3d 1057, 1071 (10th Cir. 2020)......................................................................................13

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) .................................................................................................2

*Murphy v. Matheson*,
  742 F.2d 564, 568 (10th Cir. 1984)......................................................................................6, 13

*Nat'l Cable & Telecomms. Ass'n v. FCC*,
  555 F.3d 996 (D.C. Cir. 2009) ...........................................................................................10, 11

*Rubin v. Coors Brewing Co.*,
  514 U.S. 476 (1995) ................................................................................................................11

*Sosa v. Onfido, Inc.*,
  600 F. Supp. 3d 859 (N.D. Ill. 2022) ......................................................................................10

*Trans Union Corp. v. Fed. Trade Comm'n*,
  245 F.3d 809 (D.C. Cir. 2001) ................................................................................................10

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
  489 U.S. 749 (1989) ................................................................................................................10

*United States v. Hansen*,
  143 S. Ct. 1932 (2023) ..............................................................................................................7

*United States v. Williams*,
  553 U.S. 285 (2008) .........................................................................................................*passim*

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
  455 U.S. 489 (1982) .....................................................................................................6, 7, 8, 13

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) ..........................................................................................6

*Yershov v. Gannett Satellite Info. Network, Inc.*,
  820 F.3d 482 (1st Cir. 2016) ...........................................................................11

**Statutes**

18 U.S.C. § 2710 ..................................................................................*passim*

Mich. Comp. Laws Ann. §§ 445.1711-445.1715 .........................................4

**Legislative Materials**

S. Rep. No. 100-599 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1................................2, 9, 12

## **INTRODUCTION**

The Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, prohibits "video tape service provider[s]" from knowingly disclosing their customers' personally identifiable information to "any person," with limited exceptions. Here, Plaintiff Tim Peterson, individually and on behalf of a putative class, alleges that Defendants Learfield Communications, LLC and Sidearm Sports, LLC (collectively "Learfield") violated the VPPA by knowingly disclosing to Facebook information about videos Peterson viewed on The University of Nebraska-Lincoln's team website. Learfield moved to dismiss the complaint primarily on non-constitutional grounds. Learfield also made two constitutional claims: (1) that the VPPA is unconstitutionally broad on its face and (2) that the VPPA violates the First Amendment as applied to Learfield.

Learfield's constitutional arguments both fail. Learfield's facial challenge that the statute is overbroad fails because the overbreadth doctrine does not apply to commercial speech, and Learfield does not identify potential applications of the VPPA beyond commercial speech. Additionally, Learfield fails to adequately allege a facial vagueness challenge to the VPPA. Learfield's as-applied challenge raising the same issues similarly fails. Moreover, the VPPA survives intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), because it is motivated by a substantial state interest, directly advances that interest, and is no more extensive than necessary to serve that interest.

Accordingly, if the Court determines it must reach Learfield's constitutional arguments to resolve the motion to dismiss, it should reject them and affirm the VPPA's constitutionality.

# BACKGROUND

I.      The Video Privacy Protection Act

Congress enacted the VPPA in 1988 in response to the *Washington City Paper*'s publication of then-Supreme-Court-nominee Robert Bork's video rental history, obtained without his knowledge or consent.  *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016).  "Members of the Judiciary Committee 'denounced the disclosure,'" and Congress passed the VPPA soon after.  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting S. Rep. No. 100-599, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1).  The statute's stated purpose was "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials."  *Id.* (quoting S. Rep. No. 100-599, at 1).  Among other things, the Senate Report cited the First Amendment right to intellectual freedom as a basis underlying the legislation.  *See* S. Rep. No. 100-599, at 4 ("Protecting an individual's choice of . . . films is a second pillar of intellectual freedom under the first amendment.").

The statute prohibits a "video tape service provider" from "knowingly" disclosing "personally identifiable information concerning any consumer" to "any person."  18 U.S.C. § 2710(b)(1).  It provides several exceptions to this prohibition, permitting (1) disclosure to the consumer; (2) disclosure the consumer has authorized via "informed, written consent" provided "in a form distinct and separate from any form setting forth other legal or financial obligations"; (3) disclosure to a law enforcement agency pursuant to a warrant, subpoena, or court order; (4) disclosure that is "solely of the names and addresses of consumers," provided the consumer had the ability to opt out and the disclosure does not identify the subject matter of any material (unless the sole purpose is marketing directly to the consumer); (5) disclosure "incident to the ordinary

course of business of the video tape service provider"[1]; and (6) disclosure pursuant to a court order in a civil proceeding. *Id.* § 2710(b)(2). The statute creates a private right of action for any aggrieved person to bring a civil suit against any person who violates its terms. *Id.* § 2710(c). The VPPA does not contemplate civil or criminal enforcement by the government.

The statute defines several key terms. Relevant here, a "video tape service provider" is "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(4). "Personally identifiable information" ("PII") is "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *Id.* § 2710(a)(3). A "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1).

Although the VPPA has recently been subject to a number of First Amendment challenges similar to the one advanced here, to date, no court has adjudicated the merits of such a challenge. An analogous state statute, however, has survived such challenges: two different judges in the Southern District of New York determined that a Michigan statute's restrictions on disclosure did not violate the First Amendment. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 435 (S.D.N.Y. 2016) ("*Hearst I*"); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 585-86 (S.D.N.Y. 2016) ("*Advance Mag.*"); *see also Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 196-98 (S.D.N.Y. 2017) ("*Hearst II*") (affirming the *Hearst I* holding). In those cases, a magazine subscriber sued two publishing companies under the Michigan Video Rental Privacy

---

[1] The VPPA defines "ordinary course of business" to include only "debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2).

Act ("MVRPA")[2]—a statute with prohibitions similar to the VPPA, but that also prohibits disclosing written materials and sound recordings consumers acquire—over their practice of selling customer information to data miners. The publishers defended the suits, in part, by arguing that the MVRPA was unconstitutional under the First Amendment on its face and as applied to them. Both courts rejected these arguments.

The court in *Hearst I*, applied the test governing commercial speech, *see Cent. Hudson*, 447 U.S. at 566, and found that the statute was constitutional as applied to the publisher's practice of selling information about its consumers to data miners and other third parties, *Hearst I*, 192 F. Supp. 3d at 451. The court determined that consumer privacy was a substantial state interest, *id.* at 447-48; the data disclosure restrictions in the MVRPA directly advance that interest, *id.* at 449; and the statute was sufficiently narrowly tailored because it "limit[ed] . . . precisely the kind of information with which the state [was] concerned"—namely, information disclosing individuals' reading, listening, and viewing preferences—and "target[ed] those most likely to disseminate it," *id.* The court also rejected the contention that the MVRPA was facially overbroad, observing that facial challenges to statutes that regulate commercial speech are limited to any non-commercial speech the statute covers and finding that the "vast majority of [the statute's] applications" raised "no constitutional problems whatsoever." *Id.* at 451-52 (quoting *United States v. Williams*, 553 U.S. 285, 302-03 (2008)). The court in *Advance Magazine* reached the same conclusions a few months later. *See Advance Mag.*, 210 F. Supp. 3d at 596-603.

---

[2] The statute's formal title is the "Preservation of Personal Privacy Act." *See* Mich. Comp. Laws Ann. §§ 445.1711-445.1715. Courts have referred to it by both names. *Compare Hearst I*, 192 F. Supp. 3d at 435, *with Advance Mag.*, 210 F. Supp. 3d at 585.

II.    Plaintiff's Claims

Plaintiff Tim Peterson brought this putative class action for declaratory and injunctive relief and damages based on Learfield's alleged disclosure of PII and video watching data. Learfield develops and operates college sports websites, including The University of Nebraska-Lincoln's, from which Plaintiff's data was allegedly collected and distributed via a tracking tool called "Facebook Pixel." Compl. ¶¶ 4, 10, 16-19, 52-53, ECF No. 1. This information allegedly "enables Facebook and [Learfield] to build valuable personal profiles for users, enhancing marketing effectiveness and increasing the chance of converting users into paying customers." *Id.* ¶ 66.

Plaintiff's proposed class encompasses "[a]ll persons in the United States with a subscription to the [University Defendants'] Website that had their personal information improperly disclosed to Facebook through the use of [Facebook] Pixel." *Id.* ¶ 107.

III.    Procedural History

Plaintiff filed a complaint against Learfield and the University of Nebraska-Lincoln and the University of Nebraska-Lincoln Department of Athletics (collectively "University Defendants") on April 16, 2023. Compl. On August 8, 2023, Plaintiff voluntarily dismissed the University Defendants. ECF No. 36. On August 14, 2023, Learfield moved to dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1), (6), and (7), raising statutory and constitutional arguments. Mot. to Dismiss, ECF No. 38. Learfield filed a notice of constitutional challenge pursuant to Federal Rule of Civil Procedure 5.1, explaining that its motion to dismiss "questions the constitutionality of the [VPPA]" and "argue[s] that the VPPA is an unconstitutional restraint on speech in violation of the First Amendment of the United States Constitution." ECF No. 39 at 1.

## ARGUMENT

The Court should decline to address the constitutionality of the VPPA until it resolves all non-constitutional issues raised in Learfield's Motion to Dismiss.[3]  *See, e.g.*, *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ("[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.").  If the Court does reach Learfield's constitutional challenges, it should reject them.

I.    The Overbreadth Doctrine Does Not Apply to Commercial Speech.

The Supreme Court has made clear that "[f]acial challenges are disfavored." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  Here, Learfield argues that the VPPA is facially unconstitutional as an "overbroad restraint on commercial speech."[4]  Mot. to Dismiss at 17.  However, "the overbreadth doctrine does not apply to commercial speech." *Murphy v. Matheson*, 742 F.2d 564, 568 (10th Cir. 1984) (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 496-97 (1982)).  Instead, if a statute targeting commercial speech also prohibits a substantial amount of non-commercial speech, the overbreadth analysis may be used to analyze the statute's non-commercial speech applications.  *See Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 481-82 (1989).  In such instances, litigants must show there is a substantial risk that a statute will have an impermissible chilling effect on non-commercial speech, i.e., "that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech."  *Broadrick v. Oklahoma*, 413 U.S. 601, 612

---

[3] The United States takes no position on Learfield's non-constitutional arguments in favor of dismissal; it intervenes in this matter solely for the limited purpose of defending the constitutionality of the VPPA.

[4] The parties do not dispute that the disclosures at issue here amount to commercial speech.  *See* Mot. to Dismiss at 18 ("[T]he information at issue in this case . . . is commercial speech."); Pl.'s Opp'n to Defs' Mot. to Dismiss at 24, ECF No. 43 ("The VPPA regulates commercial speech.").

(1973).  It is well-settled that "[i]nvalidation for overbreadth is strong medicine that is not to be casually employed."  *United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023) (quoting *Williams*, 553 U.S. at 293).    Accordingly, "[t]o justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep."  *Id.*

Learfield argues that the VPPA is unconstitutionally overbroad because it applies "to a broad range of entities that should not be regulated by the VPPA," i.e., businesses beyond the "video store rental companies contemplated in the legislative history."  Mot. to Dismiss at 18-19. However, "it is irrelevant whether [a statute] has an overbroad scope encompassing protected commercial speech of other persons, because the overbreadth doctrine does not apply to commercial speech."  *Hoffman Ests.*, 455 U.S. at 496-97.  Since Learfield only appears to address the application of the VPPA to commercial speech, *see* Mot. to Dismiss at 17 (arguing the VPPA is an "overbroad restraint on commercial speech"); *id.* at 17 n.5 (listing various companies that have been sued under the VPPA), its overbreadth argument fails.  And, in any event, as the *Hearst I* court concluded (in the analogous MVRPA context), the "vast majority of [the statute's] applications" raise "no constitutional problems whatsoever."  192 F. Supp. 3d at 451-52 (quoting *Williams*, 553 U.S. at 302-03).  Where, as here, the statute does not "reach[] a substantial amount of constitutionally protected conduct[,] . . . the overbreadth challenge must fail."  *Hoffman Ests.*, 455 U.S. at 494; *see also Hansen*, 143 S. Ct. at 1940 ("In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case.").

II.    The VPPA Is Not Unconstitutionally Vague.

Learfield's argument that the VPPA is facially unconstitutionally vague is also unavailing.[5] To succeed on a facial vagueness challenge, Learfield "must demonstrate that the law is impermissibly vague in *all* of its applications." *Hoffman Ests.*, 455 U.S. at 497 (emphasis added). Learfield does not attempt to allege that *all* applications of the VPPA are impermissibly vague. *See generally* Mot. to Dismiss. Nor does Learfield argue that people "of common intelligence must necessarily guess at [the] meaning" of the terms in the VPPA. *Cf. Broadrick*, 413 U.S. at 607 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). Instead, Learfield points to the commonly understood dictionary definition of the terms "business" and "delivery," and argues they are too broad. *See* Mot. to Dismiss at 19 & n.6. But Supreme Court "precedents make clear that a . . . vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010). "Otherwise the doctrines [of vagueness and overbreadth] would be substantially redundant." *Id.*

Additionally, the statutory terms at issue here, "business" and "delivery," Mot. to Dismiss at 19, are "quite different from the sorts of terms that [courts] have previously declared to be vague." *Holder*, 561 U.S. at 20. For example, the Supreme Court has "struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Id.* (quoting *Williams*, 553 U.S. at 306). Applying the terms "business" and "delivered," on the other hand, does not require subjective judgments. *Cf. id.* at 21 (holding the statutory terms "training," "expert advice or assistance," "service," and "personnel" were not vague). Moreover,

---

[5] Learfield does not raise any due process arguments. *See generally* Mot. to Dismiss. Although the "[v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment," *Williams*, 553 U.S. at 304, for thoroughness, the United States will briefly address vagueness.

the VPPA's "knowledge requirement . . . further reduces any potential for vagueness." *Id.*; *see* 18 U.S.C. § 2710 (b)(1) (only applying to those "who *knowingly* disclose" PII (emphasis added)).

"Whatever other problems [Learfield may have with the VPPA], it is all but frivolous to suggest that the [statute] fails to give adequate warning of what activities it proscribes or fails to set out 'explicit standards' for those who must apply it." *Broadrick*, 413 U.S. at 607 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).  Indeed, the statute provides clear standards for how businesses can comply with the VPPA, including providing exemptions, *see* 18 U.S.C. § 2710(b)(2)(A)-(F), and detailing consent requirements, *see id.* § 2710(b)(2)(B)(i)-(iii).

Accordingly, the VPPA is not unconstitutionally vague.

III.    The VPPA Withstands Intermediate Scrutiny Under *Central Hudson*.

"Commercial speech enjoys a limited measure of protection." *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 623 (1995) (quoting *Fox*, 492 U.S. at 477) (cleaned up).  Because the VPPA regulates commercial speech, its constitutionality under the First Amendment is analyzed using the *Central Hudson* standard.  *See Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 986 (10th Cir. 2020).  Under *Central Hudson*, a restriction on commercial speech survives First Amendment scrutiny if: (1) the government's "interests in proscribing [the commercial speech] are substantial," (2) "the challenged regulation advances these interests in a direct and material way," and (3) "the extent of the restriction on protected speech is in reasonable proportion to the interests served." *Id.* at 987 (quoting *Edenfield v. Fame*, 507 U.S. 761, 767 (1993)).  The VPPA's disclosure prohibitions satisfy this standard.

1)    *The asserted governmental interest underlying the VPPA is substantial.*

First, the governmental interest underlying the VPPA is "substantial."  Congress passed the VPPA "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." S. Rep. No. 100-599, at 1; *see also Eichenberger v. ESPN,*

9

*Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (explaining that the VPPA "protects privacy interests . . . by ensuring that consumers retain control over their personal information"). Courts have repeatedly recognized that protecting consumer privacy is a substantial governmental interest. *See, e.g.*, *Fla. Bar*, 515 U.S. at 625. "[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989). And courts have specifically acknowledged the government's substantial interest in protecting the privacy of consumer information and data. *See, e.g.*, *Hearst II*, 269 F. Supp. 3d at 197 (finding that protecting "personal privacy with respect to the purchase, rental, or borrowing" of video materials is a "substantial [governmental] interest"); *Advance Mag.*, 210 F. Supp. 3d at 599 (same); *Nat'l Cable & Telecomms. Ass'n v. FCC*, 555 F.3d 996, 1001 (D.C. Cir. 2009) (recognizing that "'protecting the privacy of consumer credit information' is a 'substantial' governmental interest" under *Central Hudson* (quoting *Trans Union Corp. v. Fed. Trade Comm'n*, 245 F.3d 809, 818 (D.C. Cir. 2001))); *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 882 (N.D. Ill. 2022) (holding that the government "has a substantial interest in protecting consumers, and more specifically, protecting their privacy in and control over their biometric data").

Learfield, citing *Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011), asserts that without a long tradition of proscription, the government may not impose new restrictions on speech. Mot. to Dismiss at 20. But Learfield's reliance on *Brown* is misplaced. For one, the language Learfield quotes from *Brown* addresses when legislators may establish a new category of *unprotected* speech, not when or how legislators may regulate *protected* speech. *Brown*, 564 U.S. at 794. The VPPA, in contrast, does not attempt to establish a new category of unprotected speech—it is undisputed that the prohibited disclosures at issue in this case are

10

protected speech.   For another, the Supreme Court in *Brown* applied the more stringent strict scrutiny standard and thus at no point considered what constitutes a substantial governmental interest.   *See id.* at 799.   For these reasons, *Brown* does not negate that the government has a substantial interest in protecting the privacy of consumer's PII.

       2)   *The VPPA directly advances the underlying governmental interest.*

Second, the VPPA "directly advances" the government's interest in protecting the privacy of individuals' video viewing choices.   When restricting commercial speech, the government must "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (quoting *Edenfield*, 507 U.S. at 770-71).   On its face, the VPPA applies to individuals who sell, rent, or deliver video recordings—the individuals, other than the consumer, likely to have access to the information the statute seeks to keep private.   *Hearst I*, 192 F. Supp. 3d at 449.   Restricting the ability of these individuals to disclose such information directly advances the goal of keeping that information private.   *Id*; *see also Nat'l Cable & Telecomms. Ass'n*, 555 F.3d at 1001 ("The privacy of customer information cannot be preserved unless there are restrictions on the carrier's disclosure of it."). And the lawsuits that have credibly alleged VPPA violations over the years demonstrate that the disclosures the statute seeks to prevent are a legitimate concern.   *See, e.g.*, *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 484 (1st Cir. 2016) (finding that plaintiffs adequately stated a claim under the VPPA); *Czarnionka v. Epoch Times Ass'n*, No. 22 Civ. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) (same); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221-26 (C.D. Cal. 2017) (same); *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at **1, 8 (N.D. Cal. Aug. 10, 2012) (same); *Harris v. Pub. Broad Serv.*, No. 1:22-cv-2456-MLB, 2023 WL 2583118, at *7 (N.D. Ga. Mar. 20, 2023) (same).

Learfield contends that the VPPA's "onerous and arbitrary specifications" in § 2710(b)(2)(B)(i)-(iii) do not materially advance the underlying governmental interests because the requirements offer only "minimal" benefits compared to a basic "clickwrap" agreement. Mot. to Dismiss at 21. Learfield argues that informed written consent can be obtained in other ways. *Id.* at 20. It does not follow, however, that requiring consumers to provide "informed, written consent" in a "distinct and separate" form is *ineffective* at advancing the government's interests. *See* 18 U.S.C. § 2710(b)(2)(B). Even if the benefits of such requirements are only "minimal," *see* Mot. to Dismiss at 21, they nevertheless advance the underlying governmental interest.

3) *The VPPA is sufficiently narrowly drawn.*

Third, the VPPA is sufficiently narrowly drawn. The *Central Hudson* standard requires a fit between the governmental interest and the statute restricting commercial speech that is "not necessarily perfect," but rather "reasonable." *Fox*, 492 U.S. at 480. Such a fit exists here. As explained, the VPPA's disclosure prohibitions are targeted at the commercial entities most likely to have, and thus be able to make public, the information Congress intended to protect. The statute also includes exemptions that allow consumers to make choices about their own information and permit regulated entities to conduct business and comply with law enforcement and judicial directives as necessary. The statute's consent requirements, like providing consumers an opportunity to withdraw consent on a case-by-case basis and requiring consent to be re-obtained every two years, "allow[] consumers to maintain control over personal information." S. Rep. No. 100-599, at 8.

Learfield argues the VPPA is not sufficiently narrowly drawn because "informed consent can be obtained in many ways" and without the "burdensome . . . compliance requirements" set forth in § 2710(b)(2)(B)(i)-(iii). Mot. to Dismiss at 20-21. However, the Supreme Court has

12

"made clear that the 'least restrictive means' test has no role in the commercial speech context." *Fla. Bar*, 515 U.S. at 632 (quoting *Fox*, 492 U.S. at 480); *see also McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1071 (10th Cir. 2020) (noting the government "is not required to show that its regulation is the least restrictive means of promoting its interest"). "None of [the] cases invalidating the regulation of commercial speech involved a provision that went only marginally beyond what would adequately have served the government interests." *Fox*, 492 U.S. at 479. Even if the VPPA's requirements are "not necessarily the least restrictive means," they are not "substantially excessive" and are sufficiently "narrowly tailored to achieve the desired objective." *Id.* at 479-80.

Accordingly, the VPPA survives intermediate scrutiny.

IV.     The VPPA Is Constitutional as Applied to Learfield.

Last, Learfield argues that "[t]he VPPA, as applied to Learfield, is far too vague and overbroad." Mot. to Dismiss at 21. However, as discussed above, the "overbreadth doctrine does not apply to commercial speech." *Murphy*, 742 F.2d at 568 (quoting *Hoffman Ests.*, 455 U.S. at 497). Because Learfield only alleges that its commercial speech is being implicated, *see* Mot. to Dismiss at 21 (arguing the VPPA is unconstitutional as to Learfield because it "prohibit[s] Learfield] from sharing otherwise legal *commercial* information with third parties" (emphasis added)), the overbreadth doctrine is not applicable and Learfield's as-applied challenge to the VPPA also fails.

Additionally, Learfield fails to sufficiently allege that the VPPA is vague as applied to it.[6] A vagueness challenge requires a complainant to allege either that a statute (1) "fails to provide a

---

[6] Learfield does not raise any due process arguments. *See generally* Mot. to Dismiss. Although the "[v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment," *Williams*, 553 U.S. at 304, for thoroughness, the United States will briefly address vagueness.

person of ordinary intelligence fair notice of what is prohibited, or [(2)] is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304. Learfield alleges neither.  Instead, Learfield takes issue with the application of the VPPA to Learfield "even though [it] is nothing like the 'video rental store' contemplated by Congress when enacting the VPPA."  Mot. to Dismiss at 21.  But such allegations fall short of asserting a proper vagueness claim.  *See Holder*, 561 U.S. at 20 ("[A] vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression. . . . Otherwise the doctrines [of overbreadth and vagueness] would be substantially redundant." (internal citations omitted)). Regardless, as previously explained, the statutory terms at issue here, "business" and "delivers," Mot. to Dismiss at 19, are "quite different from the sorts of terms that [courts] have previously declared to be vague." *Holder*, 561 U.S. at 20; *see also id.* (noting the Supreme Court has "struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments" (quoting *Williams*, 553 U.S. at 306)).  Applying the terms "business" and "delivered" does not require subjective judgments.  *Cf. id.* at 21 (holding the statutory terms "training," "expert advice or assistance," "service," and "personnel" were not vague).  Moreover, the VPPA's "knowledge requirement . . . further reduces any potential for vagueness."  *Id.*; *see* 18 U.S.C. § 2710 (b)(1) (only applying to those "who *knowingly* discloses" PII (emphasis added)).

Accordingly, Learfield's as-applied challenge must also fail.

## CONCLUSION

For the foregoing reasons, the Court should reject Defendant's constitutional challenge.


Date:  October 13, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Bonnie E. Devany*
BONNIE E. DEVANY
Trial Attorney (Tex. Bar No. 24131173)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 616-8101
Fax: (202) 616-8460
Email: bonnie.e.devany@usdoj.gov

*Counsel for United States*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2023, I electronically transmitted the attached

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice

of Electronic Filing to the CM/ECF registrants for this matter.


*/s/ Bonnie E. Devany*
BONNIE E. DEVANY